ROBERT R. POWELL, SBN 159747
SARAH E. MARINHO, SBN 293690
POWELL & ASSOCIATES
925 West Hedding Street
San Jose, California 95126
T: (408) 553-0201
F: (408) 553-0203
E: rpowell@rrpassociates.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE COLLINS, KORNELIA COLLINS, and S.C. [minor], | Case No.: |
| Plaintiffs, | COMPLAINT FOR DAMAGES |
| vs. | |
| COUNTY OF SAN MATEO, DIANA DAMROSCH, CAROLINE BRACAMONTE, HELEN MCCLAIN and DOES 1-10, inclusive, | [JURY TRIAL DEMANDED] |
| Defendants. | |

## I. <u>INTRODUCTION</u>

Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the

deprivation by Defendants, at all times herein acting under color of state law, of rights secured

to Plaintiffs under the United States Constitution, including Fourth and Fourteenth

Amendments, and under California law where applicable as stated herein.  This action seeks

redress for the loss of familial relations, love, comfort, society, and companionship that have

been suffered by Plaintiffs as the result of the actions of the known and unknown Defendants described herein, and the certain life altering emotional distress of those events that will continue to be suffered by Plaintiffs. This matter involves an abuse of power by government actors employed by the County of San Mateo, whose unlawful and injurious actions were taken with utter disregard for the rights and liberties of Plaintiffs, in a manner constituting a violation of substantive due process rights of Plaintiffs.

## II. <u>JURISDICTION AND VENUE</u>

1.     Jurisdiction is proper in the United States Northern District Court in the State of California in accordance with 28 U.S.C. § 1331 and 1343. Plaintiffs' claims arise under the United States Constitution and Plaintiffs seek redress for violations of their United States Constitutional rights. Additionally, supplemental jurisdiction by this Court over Plaintiffs' California state law claims is proper pursuant to 28 U.S.C. § 1367 as these claims all arise from the same facts and circumstances as Plaintiffs' federal claims.

2.     The acts alleged in Plaintiffs' Complaint all occurred in the County of San Mateo, State of California. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b). Assignment to the Oakland or San Francisco Division of the United States District Court, Northern District of California, is appropriate pursuant to Local Rule 3-2(d).

3.     Plaintiffs have timely filed an appropriate administrative/government tort claim per G.C. 910 et seq., with the County of San Mateo. The County rejected the claim on July 13, 2016. Plaintiffs have thereby satisfied all prerequisites to bringing Plaintiffs' California state law based claims.

4.     Plaintiffs demand a jury trial in this action.

//

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

## III.   IDENTIFICATION OF PARTIES

**Plaintiffs**

5.    Plaintiff KORNELIA Collins (KORNELIA) was at all times relevant to the claims herein, the biological mother of S.C., with whom S.C. had lived his entire life.

6.    Plaintiff GEORGE Collins (GEORGE) was at all times relevant to the claims herein, the biological father of S.C., with whom S.C. had lived his entire life.

7.    Plaintiff S.C. (S.C.) is a minor child that was nine (9) months of age at the time of the events complained of herein that began December 17, 2015.  S.C.'s name has been reduced to initials to comply with this Court's requirements to name minor children in a fashion that protects their identity and privacy, and it is Plaintiffs' intention to use these initials rather than the minor child's full name, unless and until otherwise ordered by the Court.

8.    Hereinafter KORNELIA, GEORGE and S.C. may, at times, be collectively referred to as "Plaintiffs."

**Entity Defendant – County of San Mateo**

9.    Defendant County of San Mateo ("COUNTY") is a public governmental entity organized and existing under the laws of the State of California.  COUNTY is authorized by law to establish certain departments responsible for enforcing laws and protecting the welfare of the citizens of COUNTY.  Defendant COUNTY is legally responsible for the events and damages complained of herein, either by virtue of respondeat superior as to the actions of the County's employees under state law, or by virtue of policies, practices, customs or procedures and/or, lack of training or insufficient training on the Constitutional rights of family members coming into contact with COUNTY employees of their Human Services Agency  (HSA) and Child & Family Services unit (CFS).

10.    At all times mentioned herein, COUNTY was responsible for overseeing the operation, management, and supervision of various sub-unit/departments within COUNTY, such as, the County of San Mateo Human Services Agency and the CFS sub-unit thereof.  These sub-unit/departments, and unknown others, are all local government agencies under the auspices of the COUNTY and may, at times hereinafter in this Complaint, be referred to collectively as "COUNTY." COUNTY and the individually named and Doe Defendant's may, as circumstances dictate, be collectively referred to at times hereinafter in this Complaint as the, "COUNTY DEFENDANTS."

**Individual &  County Employee Defendants**

11.  Defendant CAROLINA BRACAMONTE (BRACAMONTE), whose acts as alleged herein were performed in her individual capacity or as an employee of COUNTY, and under color of state law, was at all times material hereto, upon Plaintiff's information and belief, a case worker and/or emergency response worker, employed by COUNTY in its CFS unit.

12.  Defendant HELEN MCCLAIN (MCCLAIN), whose acts as alleged herein were performed in her individual capacity or as an employee of COUNTY, and under color of state law, was at all times material hereto, upon Plaintiff's information and belief, a case worker supervisor and/or emergency response worker, employed by COUNTY in its CFS unit.

13.  Defendant DIANA DAMROSCH (DAMROSCH), whose acts as alleged herein were performed in her individual capacity or as an employee of COUNTY, and under color of state law, was at all times material hereto, upon Plaintiff's information and belief, a case worker and/or emergency response worker, employed by COUNTY in its CFS unit.

//

**Does 1-10 And Agency/Capacity Allegations**

14.  Plaintiffs are ignorant of the true names and capacities of defendants Does1 through 10 and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs as described in this Complaint.  Plaintiffs will amend their complaint to state the true names and capacities of defendants Does 1 through 10 when they have been ascertained.  Any reference in this Complaint to "Defendant," "Defendants," or to an individually-named defendant also refers to defendants Does 1 through 10.

15.  At all times mentioned in this Complaint, each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and, in doing the things alleged in this Complaint, was acting within the course and scope of this agency or employment.

16.  In committing the acts and/or omissions alleged herein Defendants acted under color of authority and/or under color of law.  Plaintiffs sue all parties named as Defendants in both their individual and official capacities.

**Monell Liability**

17.  This complaint for damages does not state separately as a "Claim for Relief," a claim for the liability of the County of San Mateo for the damages complained of herein, pursuant to the case and subsequent precedent relating to and resulting from the case of *Monell v. Department of Social Services*. 436 U.S. 658 (1978), for the reason *Monell* liability is a *theory of vicarious liability*, not a separately cognizable "Claim for Relief."

18.  However, Plaintiffs request leave to amend the complaint to separately state such as a

Claim for Relief should the Court so desire, as Plaintiffs do seek to impose liability on the County for policies, procedures, customs, and practices, as well as inadequate or non-existent training contributing to and/or constituting the driving force behind the injuries complained of herein. However, this is a theory of liability, not a separate "claim."

19.  Plaintiffs are informed and believe, and thereupon allege that the COUNTY has willfully and with deliberate indifference, failed to train, and/or provide adequate training to its social workers, particularly those engaged in the "Emergency Response" function of the CFS investigation of allegations of abuse and/or neglect of children.  Many COUNTY social workers assigned to Emergency Response hold only an Associate of Arts degree, despite the State of California requirement Emergency Response workers hold a Bachelor's Degree.

20.  The training from COUNTY to their social workers that either does not exist, and/or is insufficient, is as follows: 1) training designed to educate social workers on the specifics and/or the contours of state and federal law pertaining to the lawful, vs. unlawful, warrantless removal of children; 2) training designed to educate social workers on avoiding the unlawful abuse of power and violation of constitutional rights associated with the warrantless removal from custody, and/or the continued unlawful detention of children generally.

21.  In addition, COUNTY, within its HSA and/or CFS and Emergency Response subunits, has allowed to flourish without remediation or attempts to rectify, a pervasive environment of customs and practices involving the submission of false statements, misrepresentations, and the withholding of evidence/information from parents against whom allegations of abuse/neglect have been received by CFS, when reporting to the juvenile dependency court

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

or others in the judicial system.

22.  COUNTY social workers are not reprimanded, disciplined, suspended, released, or otherwise held accountable for lies and misrepresentations made to a Court, inclusive of the practice of withholding exculpatory information or evidence from other parties to Court proceedings involving familial association rights and/or issues.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

### Background

23.  At the time of the removal of S.C. from KORNELIA and GEORGE, and the continued detention of the child out of the care of his parents for a period of 39 days, KORNELIA and GEORGE were the biological parents of S.C., and his primary caregivers.

24.  S.C. attended Little Builder's Day Care at 467 Oakridge Drive in Redwood City, California.  A woman named Dulce Toledo was his main caregiver at day care, which is owned by Andy Tran.  Mr. Tran's wife, Ling Tran, sometimes watches the kids as well.

25.  On Saturday, December 12, 2015, S.C. was throwing up and his parents took him to the Emergency Room at Sequoia Hospital.  KORNELIA caught S.C.'s bug and was also sick herself on December 13, 2015.

26.  On Monday, December 14, 2015, KORNELIA left work before lunchtime because she was feeling ill.  GEORGE advised her that he was coming home early as well because he was not feeling well and that he would pick S.C. up from day care on his way home.

27.  Around 7:00p.m., KORNELIA bathed S.C. and noticed very faint marks, not even what one might consider "bruises" at that time on his back for the first time.  She immediately advised GEORGE and discussed when and how the marks could have happened.  They decided to ask day care staff if S.C. had fallen or for any other explanation.  Since S.C. was

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

happy and otherwise seemed healthy, they decided to address the marks with his

pediatrician at an appointment that was already scheduled for December 17, 2015.

**Removal of S.C. on December 17, 2015**

28.  On Thursday, December 17, 2015, KORNELIA brought S.C. to his doctor's

appointment with S.C.'s pediatrician, Leslie Sue, D.O.  KORNELIA immediately pointed

out S.C.'s bruises to the doctor and asked her opinion.  The doctor was concerned and

consulted with her colleagues.  She advised KORNELIA that she was mandated to report

the bruising to CFS.

29.  KORNELIA and S.C. left the doctor's office and arrived home around 6:00p.m.

Around 7:00 or 7:30p.m., KORNELIA was bathing S.C. when the doorbell rang.  GEORGE

opened the door and KORNELIA came downstairs holding S.C.  Social worker Caroline

BRACAMONTE and San Mateo Police Officer Derrick Jarvis came into the living room

and BRACAMONTE explained why they were there.

30.  BRACAMONTE interviewed KORNELIA and GEORGE separately.  KORNELIA had

been holding S.C., so after her interview she gave him a bottle and laid him in his crib to

sleep.  BRACAMONTE and Officer Jarvis left around 9:00p.m.  At approximately

9:30p.m., BRACAMONTE and Officer Jarvis returned and said that S.C. needed to go to

San Mateo Medical Center for tests immediately.  KORNELIA and GEORGE pleaded with

BRACAMONTE and Officer Jarvis to wait until the next day so that their infant could

sleep.  BRACAMONTE insisted that the parents wake S.C. up and bring him to the hospital

right away.

31.  KORNELIA and GEORGE complied with BRACAMONTE'S demands and put S.C. in

the car to go to the hospital.  Outside their home, two police cars were waiting for them,

along with the County vehicle.  The parents were escorted to the hospital, with one police

car driving in front of them, and one behind them.

32.  At the hospital, BRACAMONTE checked S.C. in while KORNELIA and GEORGE

stood by in shock.  They watched as S.C. was taken to an exam room and cried hysterically

as the nurses drew his blood.  They inserted needles into his arm, ankle, and hand, resulting

marks in each area, which now at this point were indeed a bit darker.  Next, S.C. was taken

to another room for x-rays, which scared him and caused him to cry uncontrollably.  After

the skeletal survey was done, S.C. had to go back for another attempt at a blood draw.  The

nurse poked the baby's heel trying to get a blood sample, but was unsuccessful.

33.  After S.C.'s physical examination, BRACAMONTE spoke to the doctor, then to the

police officers.  KORNELIA and GEORGE were not involved in the discussions about the

findings of any exam, or about their baby's health.

34.  At 2:30 a.m. BRACAMONTE informed KORNELIA and GEORGE that S.C. was

being taken into protective custody because based on the tests they *could not determine*

*what happened to S.C.*  The parents offered to give names of relatives or friends that S.C.

could stay with instead of going into foster care, but BRACAMONTE said it was too late

for that.

35.  One of the police officers took S.C. from KORNELIA'S arms.  BRACAMONTE left

with S.C. without informing his parents where he was being taken.

36.  Police officers requested that KORNELIA and GEORGE go to the station to give

statements, which they did.  KORNELIA and GEORGE arrived home from the police

station around 4:00a.m., exhausted, traumatized, and without S.C.  They were never arrested

nor charged with any crime.

**S.C. Given Medical Treatment Without Notice or Consent**

37.    On December 23, 2015, S.C. was placed with his parents under the condition that a third-party caregiver be present at all times.  A social worker, DOE 1, dropped S.C. off at his home around 7:30p.m.

38.  KORNELIA and GEORGE were thrilled to have S.C. back at home and S.C. was happy to see his parents.  KORNELIA undressed him to change his diaper and noticed a band aid on his leg.  KORNELIA called DOE 1 and asked her why S.C. had a band aid on.  DOE 1 said "I forgot to tell you, S.C. had a visit at the pediatrician today and he got a flu shot."

39.  KORNELIA was upset and asked DOE 1 who gave permission for this inoculation?  KORNELIA informed DOE 1 that at S.C.'s appointment on December 17, 2015, KORNELIA had told Dr. Sue that she did not want S.C. to get the flu vaccine.

40.  No one had contacted KORNELIA or GEORGE to provide them with notice that S.C. had a medical appointment, given them an opportunity to attend the appointment, or to object to the treatment.

41.  On December 29, 2015, a social worker doing a home visit, Diana DAMROSCH, was informed by KORNELIA and GEORGE about the band aid and vaccination that occurred without their knowledge on December 23, 2015.  DAMROSCH stated in the jurisdiction report submitted to the court that "Sean had no medical appointments in the care of the foster mother and no immunizations."

42.  Medical records show that indeed S.C. did receive a flu vaccination while in CFS custody on December 23, 2015.

**Removal On December 24, 2015**

43.  The caregivers that had been assisting KORNELIA and GEORGE comply with the

10

court order to have a third party present at all times were unable to help on Christmas Eve or Christmas Day.  KORNELIA and GEORGE contacted everyone they could think of, including nanny agencies, but they were not able to find a caregiver in time.

44.  KORNELIA and GEORGE contacted social worker supervisor Helen MCCLAIN to let her know the situation.  MCCLAIN said they would have to bring S.C. back, and he was put into foster care again.

45.  KORNELIA and GEORGE did not get to spend S.C.'s first Christmas together as a family.

**S.C. Is Returned To KORNELIA and GEORGE**

46.   On January 25, 2016, the juvenile court dismissed the dependency case and allowed S.C. to be in the care, custody, and control of his parents without the requirement of supervision by a third party.

47.   S.C. had been unlawfully removed, detained and his family upended for 39 days.

**V.      DAMAGES**

48.  Plaintiffs suffered severe emotional distress damages, and symptoms related thereto, at the time of the events, and continuing into the future, in addition to the incursion of costs and fees related to mental and medical health treatment at the time of the events, and continuing into the future.  Damages include injury to reputation and fear of government actors and authorities, and the full extent of damages are still being ascertained.

49.  Plaintiffs seek an award of exemplary (punitive) damages under federal law and pursuant to California Civil Code §3294 to make an example of and punish Defendants for their conduct in this matter, and in the hope of deterring future conduct of a similar nature. The acts and omissions of Defendants COUNTY OF SAN MATEO, DAMROSCH,

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

BRACAMONTE, MCCLAIN and DOES 1-10, inclusive, complained of herein are malicious, oppressive, born of deliberate indifference, shocking to the conscience of the reasonable person, and despicable in the extreme, and as such, entitle Plaintiffs KORNELIA COLLINS, individually and as Guardian Ad Litem for S.C., and GEORGE COLLINS to an award of punitive damages.

## VI. <u>CLAIMS FOR RELIEF</u>

<u>FIRST CLAIM FOR RELIEF</u>
(14th Amendment Violation – Right of Familial Association - 42 U.S.C. § 1983)
(KORNELIA, GEORGE and S.C., Against BRACAMONTE)

50.  Plaintiffs KORNELIA, GEORGE and S.C. re-allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint as though fully set forth herein.

51.  Defendant BRACAMONTE's conduct in removing S.C. in the absence of any imminent risk of serious bodily injury, without parental consent, or having procured a warrant, constituted a violation of the 14th Amendment due process rights of Plaintiffs, and their rights of familial association as between KORNELIA, GEORGE and S.C.

52.  BRACAMONTE was the principal government agent, and/or integral participant in the events, circumstances, and decisions that led to the unlawful seizure of S.C.  It is unknown at the time of filing this Complaint who, if anyone, participated in an integral manner in the decision to remove S.C. from the care of his parents.

53. This claim for relief is also made against COUNTY based on their policies, practices, customs, and procedures, and/or lack of and/or non-existent appropriate training, which inadequacies or omissions were a moving force behind the removal of S.C.

54.  The damage allegations of paragraphs 48 through 49 apply to this claim for relief.

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

55.  Defendant BRACAMONTE's acts and omissions complained of herein were undertaken in willful, malicious, reckless disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages, therefore the damage allegations of paragraph 49 apply to this claim for relief.

## SECOND CLAIM FOR RELIEF
### (4th Amendment Violation – Unreasonable Seizure and Continued Detention of S.C. - 42 U.S.C. § 1983)
### (S.C. Against BRACAMONTE)

56.  Plaintiffs KORNELIA, GEORGE, and S.C. reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint as though fully set forth herein.

57.   Defendant BRACAMONTE's act of removing S.C. from his parents, and maintaining him in the custody of COUNTY for 39 days, as alleged herein, deprived S.C. of his clearly established and well-settled right to personal liberty under the 4th Amendment to the United States Constitution, specifically the right to be free from unreasonable and unlawful seizure, which right was violated by the removal of S.C. from his home and parents.

58.    This claim for relief is also made against COUNTY based on their policies, practices, customs and procedures, which were a moving force behind the removal of S.C.

59.   The damage allegations of paragraphs 48 through 49 apply to this claim for relief.

60.    Defendant BRACAMONTE's acts and omissions complained of herein were undertaken in willful, malicious, reckless disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages, therefore the damage allegations of paragraph 152 apply to this claim for relief.

//

//

13

**THIRD CLAIM FOR RELIEF**
**(14th Amendment Violations Re: Medical without Notice or Consent of Parents – 42 U.S.C. §1983)**
**(KORNELIA and GEORGE Against BRACAMONTE and DOES 1-10)**

61.  Plaintiffs KORNELIA and S.C. reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint as though fully set forth herein.

62.  BRACAMONTE and DOES 1-10 violated KORNELIA and S.C.'s rights of familial association when, on December 23, 2015, BRACAMONTE and possibly other yet Unknown Doe Defendants, in cooperation and ratification with and by COUNTY/CFS, caused S.C. to receive a vaccination, without providing KORNELIA and GEORGE notice or the opportunity to object or attend the appointment.

63.  BRACAMONTE, DOE 1, nor anyone else at CFS advised the parents of S.C. of the medical appointment or treatment, nor allowed for their attendance, or sought their consent, in violation of state and federal law, which requires that a parent of a child be notified in advance of any non-emergency, medical, or mental health appointments for their children so they may have the opportunity to attend and/or object, which are laws and regulations put into place with the important purpose of ensuring that the adult with the most knowledge about a child's medical or mental health condition is present to both inform the medical professionals so that an accurate diagnosis, if any, can be obtained, and so that the parent is fully informed from the professional about his or her findings and conclusions with regard to the child.

64.  These very same reasons and concerns are the reason why prescription medications and invasive medical procedures cannot be undertaken/provided to a minor in the care of the COUNTY, without the prior advice, consent, and presence of the child's parent.

14

Complaint for Damages
*Collins v. County of San Mateo, et al.*
U.S. District Court – Northern District
Case No.

65.  Defendant BRACAMONTE's and/or DOES 1-10's acts or omissions in this regard constituted a violation of both Plaintiff's 14th Amendment rights of familial association when BRACAMONTE and/or  DOES 1-10 unlawfully evaluated, medicated, and facilitated medical treatment – including prescription medications - to minor S.C. without notice or consent from his parents and the opportunity to attend.

66.  The COUNTY is also a named Defendant for purposes of this claim for relief, as the repeated submission of children for medical appointments and evaluation without having provided the parent(s) with notice and an opportunity to object, or an opportunity to attend such appointments, where a child is in the care, custody and control of COUNTY, is a result of the policies, practices, customs or procedures of COUNTY, and/or the lack of or non-existence of appropriate training, and these actions or omissions are the moving force behind the repeated Constitutional violations of this nature by the COUNTY and its Defendant employees complained of herein.

67.  The damage allegations of paragraphs 48 through 49 apply to this claim for relief.

68.  Defendant BRACAMONTE's acts and omissions complained of herein were undertaken in willful, malicious, reckless disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive and exemplary damages, therefore the damage allegations of paragraph 49 apply to this claim for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants, as follows:

1. For damages, penalties, costs, interest, and attorneys' fees as allowed by

42 U.S.C. §§ 1983 and 1988 and as otherwise allowed by federal or California law C.C.P.

1021.5;

2. Special and General damages;

3. Punitive damages against the individual defendants pursuant to California law, 42 U.S.C.

§ 1983, and any other provision of law providing for punitive damages;

4. Costs of suit; and

5. Such further relief as the Court deems just, necessary, and proper.


DATED:  October 3, 2016                            __/s/  Robert R. Powell_____
                                                   ROBERT R. POWELL, ESQ.
                                                    Attorney for Plaintiffs


JURY DEMAND: Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).


DATED:  October 3, 2016                            __/s/  Robert R. Powell_____
                                                   ROBERT R. POWELL, ESQ.
                                                    Attorney for Plaintiffs